WILL OF MANEGOLD: BOESEL, Petitioner, Appellant, vs. FIRST WISCONSIN TRUST COMPANY, Respondent. [Two cases.]

*April 8—May 7, 1940.*

*John P. Boesel* of Madison, attorney for Charles M. Boesel, and *Harold A. Lenicheck* of Milwaukee, attorney for John P. Boesel, for the appellants.

For the respondent there was a brief by *Shea & Hoyt* of Milwaukee, and oral argument by *Ralph M. Hoyt*.

FRITZ, J.   Each of the appellants, Charles M. and John P. Boesel, appeals from a separate judgment which was entered in a proceeding pursuant to his petition, and which settled the account of the First Wisconsin Trust Company, as trustee under the will of Charles Manegold, Jr., deceased, in relation to the rights of the appellant as a grandchild and beneficiary under a trust created by the will. The will directed the executrices, for five years after the testator's death, to pay $1,000 annually for each of his grandchildren and great grandchildren (living when he died or born within

five years thereafter) to the First Wisconsin Trust Company (hereinafter called the "trustee") in trust for these grandchildren; and the will required that trustee to "safely and conservatively invest and reinvest all the said trust estate" and to accumulate the net income of each of the "respective shares" until the beneficiary reached the age of twenty-one, when the income thereof was to be paid to the beneficiary until the beneficiary was thirty years of age, at which time "the principal and remaining income of the beneficiary's trust estate shall be distributed and paid to such beneficiary." When Manegold died on July 7, 1928, there were seven grandchildren and two great grandchildren and another was born in 1932. Letters of trust were issued to the trustee on July 17, 1929, and it then received $9,000 from the executrices and invested it in two mortgages. On November 6, 1929, Alice Janisch, a grandchild, was thirty years of age and became entitled to receive, as her share of the trust estate, $1,000 and some interest. She was paid out of the proceeds of a mortgage which was held in the trust. In the four following years $1,000 for each child was paid annually by the executrices to the trustee, and it annually paid Mrs. Janisch's $1,000 to her and invested the balance, which totaled $40,000 in the five-year period, for the benefit of the other eight beneficiaries. The only investments which appellants question are $5,000 used in July, 1930, to purchase at par mortgage notes of Reel Estates, Inc., which were part of a total issue of $35,000 and due in 1934 to 1936; $5,000 used in July, 1931, to purchase at par mortgage notes of R. H. Gaenslen, which were part of a total issue of $33,000 and due in 1931 to 1933; and $3,000 used in July, 1931, to purchase at par mortgage notes of Kellogg Patton, which were part of a total issue of $156,000 and due July 15, 1934. In August, 1934, when Charlotta Kapps, a grandchild, reached the age of thirty years and became entitled to receive her share of the trust estate, the trustee found that by taking the

listed securities at their then market value and the mortgage notes at par and adding accrued interest to date, the total value of the trust estate was $41,869.28; and it considered Mrs. Kapps entitled to receive, as her one-eighth share of that sum, $5,233.66 which it paid to her out of $5,309.50 realized by selling government bonds. At that time there were the following defaults in the mortgage-note investments, to wit: Reel Estates, Inc., had not paid the 1933 taxes on the mortgaged property; R. H. Gaenslen's notes were past due but interest and taxes were not in arrears; and on the Kellogg Patton notes the principal and interest were due and the taxes were unpaid. In December, 1935, the trustee concluded that because of these defaults and the increasing indebtedness under the notes of Reel Estates, Inc., and Kellogg Patton, it would not be equitable to treat these investments as the equivalent of cash for the purpose of future distributions to beneficiaries, and therefore the trustee sold all securities in the trust excepting the mortgage notes and realized a net profit of $779.04 on the sale. Then it set up on its books a separate account for each of the seven remaining beneficiaries and transferred to each account one seventh of the proceeds of the securities which it sold, plus a one-seventh interest in each of the three mortgage-note investments, which were in default. The total thus transferred to each account was $5,114.16, of which $1,906.29 represented their respective shares in the defaulted investments and the balance represented their shares of the proceeds of the securities sold, which were promptly reinvested by the trustee in government bonds or notes. When Charles M. Boesel reached the age of thirty years on August 22, 1937, the principal account of his share of the trust on the trustee's books consisted of $3,000 par value United States treasury notes, $165.15 in cash, and an undivided one-seventh interest in the three mortgage-note investments. He refused to accept these assets and demanded $5,000 in cash and filed his peti-

tion to compel the payment thereof. Subsequently, treasury notes valued at $2,535.62 were accepted by him as a partial distribution without prejudice. When John P. Boesel reached the age of thirty years on October 11, 1938, the principal account of his share of the trust on the trustee's books consisted of $3,000 par value of United States treasury notes, $202.80 in cash, and an undivided one-seventh interest in the three mortgage-note investments. He likewise refused to accept these assets and demanded $5,000 in cash, and filed a petition to compel the payment thereof; and subsequently accepted treasury notes worth $2,524.38 as a partial distribution without prejudice.

In the proceedings pursuant to the petitions, the court held that the will in question created but a single trust and not nine separate trusts; that consequently the trustee was not required to make separate and distinct investments for each beneficiary; that its duty was merely to suitably invest the trust funds and deliver to the beneficiaries, as each reached the age of thirty years, their respective shares of the investments, and it was not obliged to pay $5,000 in cash to each of the appellants as a beneficiary under the trust; that the trustee used due care in making and retaining the mortgage investments, and each was a lawful investment and not in excess of the proportion of the trust fund permitted by law to be invested in a single security; but that the trustee erred in assuming these investments to be the equivalent of cash when it settled with Charlotta Kapps in 1934, and because of that error it was its duty to place each of the appellants in the same position as though it had required her to accept her aliquot interest in these three investments instead of paying her in cash; and that the trustee was entitled to retain out of each of the appellants' share of the trust estate, an allowance of $125 on account of the fees of its attorneys for their services in these proceedings. In accordance with its conclusions the court recast the account of each of the appellants in re-

spect to investments in the Reel Estates, Inc., and Kellogg Patton mortgage notes by placing in each account a one-eighth interest in these investments, instead of the one-seventh interest which the trustee had allocated to each account in 1934; and by requiring the trustee, in its individual capacity, to pay to each appellant $146.99 in cash, which is the difference between the one-seventh and the one-eighth interest. But in that connection and in exchange for each of these payments, the trustee was authorized to assign to itself individually a one fifty-sixth interest in these two mortgage investments, which is the difference between a one-seventh and a one-eighth interest therein. The final result is that the only assets of uncertain value in the appellants' accounts are the one-eighth interests in the Reel Estates, Inc., investment, and a like interest in the Kellogg Patton investment in John P. Boesel's account. In place of Charles M. Boesel's interest in the latter investment he has been credited with his *pro rata* share of the cash proceeds on a foreclosure sale. No readjustment was necessary as to the Gaenslen investment because it was repaid in full before the final hearing.

Appellants assign as error the court's rulings (1) that the will provided for the establishment of but one trust for all the beneficiaries; (2) that the investments of the trustee were made in accordance with the provisions of the will and did not violate the terms thereof; (3) that the "Fifth" and "Fifteenth" paragraphs of the will required the trustee to distribute to the beneficiaries in kind instead of cash; (4) that no new trusts or new accounts were established by the acts of the trustee in 1935; and (5) that the trustee was entitled to retain $125 out of the share of each appellant on account of its attorneys' fees for their services in these proceedings.

Upon the proposition which appellants seek to establish in these proceedings by their contention that the will created a separate trust for each beneficiary, they base the further con-

tention that the investments in the mortgage notes violated the provisions of the will and were not in accordance with the law.  Neither of these contentions can be sustained.  It is provided in the Fifth paragraph of the will, after directing the executrices to "pay to the First Wisconsin Trust Company, in trust for my grandchildren and great grandchildren, living at the time of my death, for each the sum of one thousand and no/100 ($1,000) dollars per annum," that "the trust which is hereby created for the use and benefit of all such grandchildren and great grandchildren shall be upon the terms and conditions hereinafter mentioned."  Thus, by the use of the article "the" in connection with the word "trust" in the singular instead of using the plural form, the testator evidences the intention in the sentence last quoted to create but one trust for all of his grandchildren and great grandchildren.  Furthermore, in connection with prescribing in the Fifteenth paragraph of the will that the sums of $1,000 so required to be paid "shall be held by the First Wisconsin Trust Company in trust for such respective beneficiaries as follows:" the trustee is directed, "to take, receive, have, hold, manage, administer, collect, safely and conservatively invest and reinvest all the said trust estate for the said respective issue, grandchildren and great grandchildren and accumulate the net income of each of the respective shares until such beneficiary shall attain the age of twenty-one years."  It is significant that in this provision, by which the duties of the trustee as to investment and management are prescribed, the language used by the testator likewise indicated the singleness of the trust; and that the requirement is that the trustee invest "all the said trust estate," instead of stating that it is to invest "each of the said trust estates."  Moreover, in stating how the trust estate shall be managed and invested, the testator in referring to it again uses a term which is in the singular and not the plural form, and in connection therewith directs that the net income of "each of the

respective shares" be accumulated until "such beneficiary shall attain the age of twenty-one years." The meaning of the word "shares" is parts or portions of a whole, and that word as used in the provision in question manifestly means parts or portions of the one trust estate which is created by the testator. It is true that, after thus using terms which relate to but one trust, there may seem to be, upon but a superficial reading of the will, some confusion by reason of the term "beneficiary's trust" in the provision in the Fifteenth paragraph which reads,—

"and when and as each of such beneficiaries shall attain the age of twenty-one years to then pay the net income of such beneficiary's trust to such beneficiary until such beneficiary shall attain the age of thirty years, if he or she shall so long live, and such net income shall be paid to such beneficiary at convenient intervals at least semiannually. And when and as each beneficiary attains the age of thirty years the principal and remaining income of the beneficiary's trust estate shall be distributed and paid to such beneficiary, if he or she shall so long live."

However, as there is in the will no provision whatever by which a separate trust for each beneficiary is created, the intended meaning or application of the term "beneficiary's trust" in the provision last quoted is uncertain unless it was intended thereby to mean a beneficiary's respective share or part or portion of the one trust estate which is created by the will. On the other hand, had the testator intended to set up a separate trust for each of his grandchildren and great grandchildren it would have been very simple to have so stated, instead of speaking in the Fifth paragraph of "the trust which is hereby created for the use and benefit of all such grandchildren and great grandchildren;" and of referring in the Fifteenth paragraph to the trustee's duty in the management and investment of "all the said trust estate," and to the respective "shares" therein of the several beneficiaries. For the reasons stated the trial court was warranted

in concluding, upon a consideration of the whole will, that the subsequent incidental references to the "beneficiary's trust estate" do not destroy the otherwise expressed intention that a single trust be created.

Inasmuch as but one trust is created by the will, the trustee's investment of the respective sums which it invested in notes secured by the Reel Estates, Inc., Gaenslen, and Kellogg Patton mortgages did not violate provisions of the will or the law. The evidence in relation to these investments reasonably admits of the court's finding that in making them the trustee "exercised that degree of care and prudence which is required of trustees in the making of investments; and thereafter and up to the present time the trustee has exercised reasonable care and diligence, under the circumstances existing, in continuing to hold said mortgage notes as an investment of said trust." These findings in turn warranted the court's conclusions that they "were lawful and proper investments when made, and the amount of the trust fund invested in each of said mortgage notes did not exceed the proportion of the fund permitted by law to be invested in a single security;" and that the trustee breached no duty to appellants as beneficiaries "in continuing to hold said mortgage notes up to the present time."

Likewise appellants' contention that the will required the trustee to distribute the share of the corpus of each beneficiary in cash cannot be sustained. The will, in connection with directing the executrices to pay the specified amounts annually for five years to the trustee, directs the latter to "invest and reinvest all the said trust estate for the said respective issue . . . and accumulate the net income of each of the respective shares until such beneficiary shall attain the age of twenty-one years." Then, as a beneficiary attains that age, the trustee is to "pay the net income of such beneficiary's trust to such beneficiary" until he reaches the age of thirty years; and finally, as each attains the latter age "the

principal and remaining income of the beneficiary's trust estate shall be distributed and paid to such beneficiary." The evidently carefully chosen words in these provisions disclose that the testator had in mind not only that the money paid by the executrices to the trustee was to be invested so as to produce income, which was to be accumulated for or paid semiannually to beneficiaries as directed, but also that there would be corpus and some remnant of undistributed income. Hence the direction in the will that the principal and remaining income "be distributed and paid;" that is to say, the principal was to be distributed and the income was to be paid. Appellants, in contending that they were to be paid entirely in cash, place great emphasis on the word "paid" and seek to disregard the word "distributed." But the testator saw fit to use both of these words in the provision which relates to the final disposition of the corpus, and according to ordinary and correct grammatical construction the words "distributed" and "paid" are the two separate predicates of a sentence having two separate subjects. Had the testator intended the beneficiaries to receive nothing but cash there was no occasion for the use of the word "distributed." It would have sufficed to use only the word "paid," and the word "distributed" should and presumably would have been omitted. Furthermore, the provision which required the trustee to "invest and reinvest all the said trust estate" and to pay over the net income semiannually as each beneficiary attains the age of twenty-one years precluded holding the trust fund in the form of cash, which obviously would produce no income. And if, as appellants contend, the trustee was also to pay each beneficiary in cash upon reaching the age of thirty years, then it would follow that the trustee was virtually required by the will to guarantee the continuing value and the liquidity of the investments which it was to make. It is improbable that any such extraordinary obligation would be knowingly assumed by a trustee. In the absence thereof,

trustees are not insurers of the investments which they make. On the contrary, where a trustee "has acted in good faith and with due care in making his investments, no doubt the beneficiary must accept the specific securities in which the trustee has invested." *Estate of Fouks,* 213 Wis. 550, 554, 252 N. W. 160.

Neither did the court err in concluding that no new trusts or new accounts were established by the trustee, in setting up separate accounts on its books for the share of each beneficiary in the trust estate after it paid Charlotta Kapps in cash in 1934. On this subject the evidence warranted the statement in the court's written decision that "there was but one trust intended and of course, that being the case, the trustee could not alter that situation if it so desired, and from the testimony I am satisfied that it did not attempt to do so. The trustee merely divided the account into eight parts for convenience and to facilitate payment and distribution." It is evident under the evidence that the change in the trustee's bookkeeping method was merely to assure a fairer method of distribution in the future, in view of the lack of liquidity which arose as to a portion of the trust investments. While the assets of the trust estate continued liquid and salable on short notice, and the equivalent of actual currency could be allotted in specie to the separate divisions of the trust without a chance of injustice to anyone, there was no necessity for setting up separate accounts with undivided interests credited to each beneficiary. That did not become necessary until the investments in the mortgage notes were no longer liquid, because of which beneficiaries paid on the basis of the cost thereof might obtain an advantage over the others. Moreover, no separate trust for each beneficiary could be created by the trustee changing its bookkeeping method, or in any other manner; and as there was but one trust created by the will each beneficiary had an undivided interest in all of the trust assets.

In assigning as error the allowance by the court of $125 to be retained by the trustee out of each appellant's share on account of fees of its attorneys for services, the appellants contend that whether there should be such an allowance to a contestant in proceedings relating to a trustee's account depends, under sec. 324.13 (1), Stats., upon whether the contest is necessary or meritorious, and the contestant is successful. Appellants claim it was necessary to contest and there was merit in their contesting the trustee's payment of Charlotta Kapps' share in cash and then crediting each of the remaining beneficiaries with a one-seventh interest in the mortgage-note investments and subsequently insisting on appellants' accepting the undivided interests instead of being paid out in cash. Although the appellants were unsuccessful in their contention that each was entitled to cash for the full amount of the share of the trust estate which he claimed, they were successful to the extent that the court held each obliged to accept but a one-eighth interest in the unliquidated mortgage investments instead of the one-seventh interest credited to him by the trustee; and that in lieu of the one fifty-sixth interest, the trustee was required in its individual capacity to add $146.99 in cash, with interest, to the share of each appellant in exchange for the one fifty-sixth interest assigned to the Trust Company. In view of these circumstances, the court erred in making the allowances to the trustee for attorneys' fees, and therefore the judgments under review must be modified by striking therefrom the provision in relation to the fees. As thus modified the judgments must be affirmed.

*By the Court.*—Judgments modified as directed in the opinion; and affirmed as modified, without costs, excepting the payment of the clerk's fees by the First Wisconsin Trust Company, as trustee.